UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANDRA THORNELL,<br><br>                Plaintiff,<br><br>    v.<br><br>SEATTLE SERV. BUREAU, INC., and<br>STATE FARM MUT. AUTO INS. CO.,<br><br>                Defendants. | CASE NO. C14-1601 MJP<br><br>ORDER ON MOTION TO DISMISS<br>AND MOTION TO STRIKE |

THIS MATTER comes before the Court on Defendant State Farm Mutual Automobile Insurance Company's ("State Farm's") Motion to Dismiss and Motion to Strike (Dkt. No. 9) and Defendant Seattle Service Bureau's ("SSB's") Joinder in State Farm's Motion to Dismiss and Motion to Strike (Dkt. No. 12). Having reviewed the motions, Plaintiff's Response (Dkt. No. 18), Defendants' Replies (Dkt. Nos. 201, 22), and all related papers, the Court hereby GRANTS the Motions in part and DENIES them in part. In a separate order, the Court will certify questions to the Washington Supreme Court and stay the remainder of the case.

**Background**

Plaintiff Sandra Thornell, a resident of Texas, brings this putative class action alleging unjust enrichment and Washington Consumer Protection Act violations against State Farm, an Illinois corporation, and Seattle Service Bureau, a Washington corporation. (See Dkt. No. 1, Ex. A at 3.) According to the Complaint, the violations stem from an allegedly deceptive practice by State Farm of referring unliquidated subrogation claims to SSB, which then sends debt collection letters demanding a specified sum to persons against whom the claims could be brought. (See id. at 3–7.)

Plaintiff further alleges she enrolled in a credit monitoring program at her expense and sought and retained counsel as a result of the debt collection letters she received from SSB on behalf of State Farm. (Id. at 7.) She does not allege that she remitted payments to SSB or State Farm in response to the letters.

**Analysis**

I.   Legal Standard

The Federal Rules require a plaintiff to plead "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 545). In determining plausibility, the Court accepts all facts in the Complaint as true. Barker v. Riverside Cnty. Office

1   of Educ., 584 F.3d 821, 824 (9th Cir. 2009). The Court need not accept as true any legal

2   conclusions put forth by the plaintiff. Iqbal, 556 U.S. at 678.

3       II.    Vicarious Liability by State Farm

4       Defendant State Farm first asserts it is not directly or vicariously liable for the actions of

5   SSB. (Dkt. No. 9 at 6–9.) Plaintiff argues State Farm is liable for the content of the letters sent by

6   Seattle Service Bureau because SSB was State Farm's agent, SSB acted in concert with State

7   Farm, and/or State Farm ratified the conduct of SSB. (Dkt. No. 18 at 9–11.)

8       According to the state court Complaint, SSB sent the demand letters. (Dkt. No. 1-1 at 4–

9   5.) In the letters, SSB allegedly stated that "State Farm 'has assigned this claim to our office to

10   pursue collections against you.'" (Id. at 4.) However, in the letter labeled "FINAL NOTICE,"

11   State Farm was identified as the "creditor." (Id. at 5.) The Complaint also describes the activities

12   of the two entities as joint actions. (See, e.g., id. at 5 ("[A]t the time that Defendants began their

13   self-described 'collection' activity, State Farm possessed, at best, a potential, unliquidated claim

14   based on a subrogated interest from its insured.").)

15       State Farm notes Washington courts have not automatically inferred an agency

16   relationship between insurers and debt collectors, drawing a distinction between responsibility

17   for the deceptive form of collection letters and the mere fact that an insurer deputized a debt

18   collector to attempt to collect on or settle subrogated claims. At the summary judgment stage of a

19   similar lawsuit, the Washington Court of Appeals held that "the practice of referring a

20   subrogation interest to a debt collector does not by itself have the capacity to deceive a

21   substantial portion of the public. [The collector] could have sent out [non-deceptive] letters like

22   [the insurer's]." Stephens v. Omni Ins. Co., 138 Wn.App. 151, 182 (2007), aff'd on other

23   grounds by Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27 (2009). Defendant therefore urges

24

ORDER ON MOTION TO DISMISS AND
MOTION TO STRIKE- 3

1 the Court to hold that a complaint alleging referral without more does not state facts sufficient to
2 withstand motion to dismiss. (See Dkt. No. 9 at 7.)

3 State Farm relies on the description of the relationship between SSB and State Farm
4 contained within the letters quoted in the Complaint, but the letters' characterization of the
5 relationship as one of potentially arms'-length "assignment" (see Dkt. No. 1, Ex. A at 4) is not
6 inherently persuasive, since the letters themselves are alleged to be deceptive. In light of
7 Defendant's comparison of this factual scenario with that described in Stephens, a more rational
8 inference is that State Farm "referred an unliquidated subrogation claim" to SSB instead of
9 assigning or selling the claim in exchange for money up front and washing its hands of later
10 collection efforts. (See Dkt. No. 21 at 4.) An inference of a continuing relationship is also
11 supported by a declaration submitted by State Farm in support of federal jurisdiction: a State
12 Farm employee states that "Within the last four years, Defendant Seattle Service Bureau [. . .]
13 has collected and remitted at least $6,352,194 to State Farm in connection with approximately
14 26,273 uninsured claims assigned throughout the 50 states." (Fuchs Decl., Dkt. No. 3 at 2.) That
15 employee also describes his duties as including "the vendor management program involving
16 referrals of subrogation claims to collection agencies." (Id. at 1.) (Consideration of this extrinsic
17 evidence is more appropriate to the jurisdictional question than the sufficiency of the complaint,
18 but since the evidence cannot be reasonably questioned by State Farm, who offered it, it would
19 be artificial to draw a conclusion contradicting it during the analysis of the motion to dismiss.
20 See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1141 n.5 (9th Cir. 2003).)

21 Through the Complaint's allegations that State Farm and Seattle Service Bureau acted in
22 concert, Plaintiff plausibly alleges an agency relationship between State Farm and its vendor. In

23
24

accordance with Stephens, additional evidence to support these allegations will be necessary to demonstrate agency at the summary judgment stage.

### III. Extraterritoriality

Defendant State Farm argues the Washington Consumer Protection Act does not apply to claims made by plaintiffs who are not Washington citizens, particularly against non-Washington corporations. (Dkt. No. 9 at 8–13.) Defendant Seattle Service Bureau "incorporates the arguments made by State Farm on this topic" (Dkt. No. 12 at 3) and further argues that Texas law should control. (Dkt. No. 22 at 1.) Here, Plaintiff is from Texas and State Farm is an Illinois corporation. However, Seattle Service Bureau is a Washington corporation.

#### A. State Farm

The Washington Supreme Court opinion cited by State Farm in support of its argument that the WCPA cannot be applied extraterritorially was later withdrawn by the Supreme Court. See Schnall v. AT&T Wireless Servs, Inc., 168 Wn.2d 125, 142 (2010) ("Schnall I"), opinion withdrawn upon reconsideration by Schnall v. AT&T Wireless Servs, Inc., 171 Wn.2d 260 (2011) ("Schnall II"). In addition, the superseding opinion contains the dissenting opinion of three justices who would have specifically held that claims against Washington corporations are cognizable under the WCPA, while the majority declined to reach the issue. See Schnall II, 171 Wn.2d 260, 287 (opinion of Sanders, J.). The dissenting justices thought it was important that "[a]t least one party [in the case] is native to Washington in every transaction here." Id.

Plaintiff points out that in the wake of Schnall II, several judges in this District have held that the WCPA has extraterritorial application to claims by out-of-state plaintiffs against Washington corporations based on the understood state of the law prior to Schnall I. (Dkt. No. 18 at 17.) See, e.g., Keithly v. Intelius Inc., No. C09-1485RSL, 2011 WL 2790471, *1 (W.D. Wash.

1  May 17, 2011); Rajagopalan v. NoteWorld, LLC, No. C11–05574BHS, 2012 WL 727075, *5 &

2  n.6 (W.D. Wash. Mar. 6, 2012); Peterson v. Graoch Assocs. No. 111 Ltd. Partnership, No. C11-

3  5069BHS, 2012 WL 254264, *2 (W.D. Wash. Jan. 26, 2012). This case, however, relates to an

4  Illinois defendant and its alleged Washington agent. No case specifically holds that the WCPA

5  applies to a foreign plaintiff's suit against a foreign corporation, even one that hired a

6  Washington vendor to pursue the conduct at issue.

7       State Farm also asks in the alternative that the extraterritoriality question be certified to

8  the Washington Supreme Court. Certification of the question of the WCPA's application to out-

9  of-state plaintiffs, out-of-state defendants, or both, is appropriate in this context. See Red Lion

10 Hotels Franchising, Inc. v. MAK, LLC, 663 F.3d 1080, 1091 (9th Cir. 2011) (describing the

11 extraterritorial reach of the WCPA as an open question); Keystone Land & Dev. Co. v. Xerox

12 Co., 353 F.3d 1093, 1097 (9th Cir. 2003) (holding that where the availability of a claim has not

13 been decided by the Washington Supreme Court and where the answer to a certified question

14 would have fair-reaching effects on those who contract in, or are subject to, Washington law,

15 certification is appropriate). An order certifying questions will follow. Because the primary

16 question at issue here concerns statutory interpretation, the Court does not reach the due process

17 question as applied to State Farm.

18       B.    Seattle Service Bureau

19       SSB, a Washington corporation, joins State Farm's brief on extraterritoriality and

20 expands on the choice-of-law argument in its reply. (Dkt. No. 12 at 3; Dkt. No. 22 at 2–3.) In its

21 Motion, State Farm cites Allstate Ins. Co. v. Hague regarding the constitutional choice of law

22 standard: "[F]or a State's substantive law to be selected [and applied to a particular case] in a

23 constitutionally permissible manner, that State must have a significant contact or significant

24

aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." 449 U.S. 302, 312–13 (1981). Plaintiff argues the state of Washington has a significant contact with the allegedly deceptive conduct of SSB where SSB is a Washington corporation, the letters were presumably composed in Washington, and the letters asked that payments be remitted to a post office box in Washington. (Dkt. No. 18 at 13.) The Court agrees that these contacts are sufficiently significant to apply Washington law at this stage of the proceedings, but the open question about extraterritorial application to an out-of-state plaintiff remains.

SSB also points to the choice-of-law rules applicable in this Court to argue Texas law should apply here. (See Dkt. No. 22 at 2.) A federal court sitting in diversity applies the choice-of-law rules of its forum state. Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Tex., 14 S.Ct. 568, 582 (2013). Washington uses a two-step approach to choice-of-law questions. Kelley v. Microsoft Corp., 251 F.R.D. 544, 550 (W.D.Wash.2008). First, courts determine whether an actual conflict between Washington and other applicable state law exists. Id. A conflict exists when the various states' laws could produce different outcomes on the same legal issue. Id. In the absence of a conflict, Washington law applies. Id. If a conflict exists, courts then determine the forum that has the "most significant relationship" to the action to determine the applicable law. Id.

Assuming without deciding that a conflict exists because the question has not been briefed in any detail, the Court concludes that the final choice-of-law analysis depends on factual issues and declines to decide the issue at this stage in the proceeding. See Southwell v. Widing Transp., 101 Wn.2d 200, 207–08 (1984) ("An unsubstantiated claim by a plaintiff [. . .] does not

1   provide a sufficient factual basis for this court to evaluate the significance of all the contacts with
2   concerned jurisdictions.").

3   For the same reasons discussed in the State Farm section, the Court will certify to the
4   Washington Supreme Court the question of the extraterritorial application of the WCPA to the
5   factual scenarios involving SSB.

6       IV.    Unjust Enrichment

7   State Farm and SSB argue Plaintiff's unjust enrichment claim fails because Plaintiff
8   cannot allege she conferred any benefit on State Farm (or SSB). (See Dkt. No. 9 at 13; Dkt. No.
9   12 at 3.) Here, Plaintiff does not allege she made a payment in response to the SSB letters, but
10  simply alleges that she purchased a credit monitoring program and consulted with legal counsel.
11  (Dkt. No. 2 at 9.) Plaintiff counters that State Farm and SSB benefitted from their deceptive
12  letters regardless of whether Plaintiff herself contributed to that benefit. (Dkt. No. 18 at 19.)

13  Under Washington law, unjust enrichment occurs when there is "a benefit conferred upon
14  the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and
15  the acceptance or retention by the defendant of the benefit under such circumstances as to make
16  it inequitable for the defendant to retain the benefit without the payment of its value." Young v.
17  Young, 164 Wn.2d 477, 484 (2008). Under Illinois law, which Plaintiff raises in its Response
18  with reference to State Farm (an Illinois corporation), "[t]o state a cause of action based on the
19  theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a
20  benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates
21  fundamental principles of justice, equity, and good conscience." Firemen's Annuity & Benefit
22  Fund of City of Chicago v. Municipal Employees', Officers', & Officials' Annuity & Benefit
23  Fund of Chicago, 579 N.E.2d 1003, 1007 (Ill. App. 1991). However, unjust enrichment is not
24

1    available as a separate claim under Illinois law; it is merely a remedy for other causes of action.

2    <u>Chicago Title Ins. Co. v. Teachers' Retirement System of State of Ill.</u>, 7 N.E.3d 19, 24 (Ill. App.

3    2014).

4        State Farm is correct that whatever benefit it allegedly retained was not conferred "by the

5    plaintiff" here; the same is true of SSB. Contrary to Plaintiff's argument, the benefits conferred

6    by absent class members are not relevant prior to class certification. Plaintiff's Complaint fails to

7    adequately allege the first element of an unjust enrichment claim under Washington law.

8    Assuming Illinois law could apply here, the claim is equally nonviable, both because unjust

9    enrichment is not a separate claim and because Plaintiff has not adequately alleged State Farm

10   benefited "to the plaintiff's detriment." The unjust enrichment claim is dismissed.

11       V.    Injunctive and Declaratory Relief

12       Defendant State Farm argues Plaintiff's requests for injunctive and declaratory relief

13   must be dismissed because Plaintiff's injuries are adequately addressed by monetary relief. The

14   WCPA permits an injured person to "bring a civil action in superior court to enjoin further

15   violations, to recover the actual damages sustained by him or her, or both, together with the costs

16   of the suit, including a reasonable attorney's fee." RCW 19.86.90 (emphasis added). Meanwhile,

17   the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its

18   jurisdiction [ . . . ] any court of the United States  [ . . . ] may declare the rights and other legal

19   relations of any interested party seeking such declaration, whether or not further relief is or could

20   be sought." 28 U.S.C. § 2201(a).

21       Defendant State Farm states the general standard for injunctive relief, citing <u>Kucera v.

22   State Dep't of Transp.</u>, 140 Wn. 2d 200, 209 (2000), but in that case a trial court was deciding

23   whether to issue a preliminary injunction, not whether the plaintiff had stated a claim for

24

injunctive relief. The parties have cited no cases in this District or Circuit or under the Washington Consumer Protection Act where courts have dismissed equitable remedies on the basis that the plaintiff had an adequate remedy at law, and the Court declines to decide the issue at this stage in the proceeding.

VI. Class Allegations

Finally, Defendants asks that Plaintiff's class allegation be struck under Federal Rule of Civil Procedure 12(f). (Dkt. No. 9 at 16.) Certain district courts in this Circuit but outside this District have permitted class allegations to be struck at the pleadings stage. See, e.g., Sanders v. Apple Inc., 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009). Federal Rule of Civil Procedure 23(c)(1)(D) also provides that in a class action, a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." However, most courts decline to strike class allegations prior to a class certification motion and an opportunity to conduct discovery. See Cruz v. Sky Chefs, No. C-12-02705 DMR, 2013 WL 1892337, *6 (N.D. Cal. May 6, 2013) (compiling cases). In the context of this case, where the propriety of a WCPA claim by a non-Washington Plaintiff against both Washington and non-Washington Defendants has not yet been decided, the motion to strike is denied as premature.

**Conclusion**

The Motions to Dismiss Plaintiff's unjust enrichment claim are GRANTED and the Motions to Strike class allegations and the Motion to Dismiss Plaintiff's request for injunctive and declaratory relief are DENIED. Defendants' request to certify questions regarding the extraterritorial application of the WCPA is GRANTED; certified questions will follow in a separate order.

1  The clerk is ordered to provide copies of this order to all counsel.

2  Dated this 6th day of March, 2015.

Marsha J. Pechman
Chief United States District Judge