1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
9               AT SEATTLE

10   SANDRA THORNELL,                    CASE NO. C14-1601-MJP

11                    Plaintiff,         ORDER GRANTING
                                         DEFENDANTS' SUPPLEMENTAL
12          v.                           MOTION TO DISMISS

13   SEATTLE SERV. BUREAU, INC., et al.,

14                    Defendants.

15

16          THIS MATTER comes before the Court on Defendants' Supplemental Motion to

17   Dismiss. (Dkt. Nos. 9, 12, 55.)  Having heard oral argument and having considered the Parties'

18   briefing and all related papers, the Court GRANTS the Motion and DISMISSES this action with

19   prejudice.

20                                      **Background**

21          Plaintiff Sandra Thornell, a resident of Texas, brought this putative class action against

22   Defendants State Farm, an Illinois corporation, and Seattle Service Bureau, a Washington

23   corporation, asserting claims for unjust enrichment and violation of Washington's Consumer

24   Protection Act.  (Dkt. No. 1-1.)  Plaintiff's claims stem from State Farm's allegedly deceptive

practice of referring unliquidated subrogation claims to Seattle Service Bureau ("SSB"), which then sends debt collection letters demanding a specified sum to persons against whom the claims could be brought.  (Id.)  Plaintiff alleges she enrolled in a credit monitoring program at her expense and sought and retained counsel as a result of the debt collection letters she received from SSB on behalf of State Farm.  (Id.)  Plaintiff does not allege that she remitted payments to SSB or State Farm in response to the letters.  (Id.)

Defendants moved to dismiss Plaintiff's complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 9, 12.)  The Court granted in part and denied in part the motions, finding that Plaintiff had failed to state a claim for unjust enrichment, but that Plaintiff had plausibly alleged an agency relationship between State Farm and SSB and that dismissing Plaintiff's class allegations would be premature.  (Dkt. No. 41.)  Finding that the scope of the Consumer Protection Act's ("CPA") extraterritorial reach presented an open question under Washington law, the Court deferred ruling on the motion to dismiss Plaintiff's CPA claim and instead granted State Farm's alternative request to certify questions to the Washington Supreme Court.  (Dkt. No. 42.)

On January 11, 2016, the Washington Supreme Court answered the certified questions, and this Court lifted the stay in this matter.  (Dkt. Nos. 53, 54.)  State Farm now renews its motion to dismiss Plaintiff's CPA claim, arguing that while the Washington Supreme Court held that the CPA can apply extraterritorially, doing so in this instance would run afoul of Washington's choice-of-law provisions and would violate due process.  (Dkt. No. 55.)  Plaintiff opposes the motion, arguing that the Court should apply the Washington CPA as intended by the legislature, and that doing so does not run afoul of the Constitution.  (Dkt. No. 61.)

1

**Discussion**

2    I.    Legal Standards

3          A.    Motion to Dismiss

4          Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a

5    claim upon which relief can be granted."  In ruling on a motion to dismiss, the Court must

6    construe the complaint in the light most favorable to the non-moving party.  Livid Holdings Ltd.

7    v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  The Court must accept all

8    well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of

9    the plaintiff.  Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998).

10         Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim

11   to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A

12   claim is plausible on its face "when the plaintiff pleads factual content that allows the court to

13   draw the reasonable inference that the defendant is liable for the misconduct alleged."  Aschcroft

14   v. Iqbal, 556 U.S. 662, 678 (2009).  As a result, a complaint must contain "more than labels and

15   conclusions, and a formulaic recitation of the elements of a cause of action will not do."

16   Twombly, 550 U.S. at 555.

17         B.    Choice of Law

18         A federal court sitting in diversity applies the choice-of-law rules of its forum state to

19   determine which substantive law controls.  Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist.

20   of Tex., 134 S. Ct. 568, 582 (2013).  Washington uses a two-step approach to choice-of-

21   questions.  Kelley v. Microsoft Corp., 251 F.R.D. 544, 550 (W.D. Wash. 2008).  First, courts

22   determine whether an actual conflict between Washington and other applicable state law exists.

23   Id.  A conflict exists when the various states' laws could produce different outcomes on the same

24

1    legal issue.  Id.  In the absence of a conflict, Washington law applies.  Id.  If a conflict exists,

2    courts then determine the forum or fora that have the "most significant relationship" to the action

3    to determine the applicable law.  Id.

4          II.      Choice of Law

5          The Parties agree that a conflict exists between Washington's CPA and the Texas

6    equivalent because Texas law does not classify the recipient of a collection letter as a

7    "consumer" and thus does not provide a cause of action for Ms. Thornell or those similarly

8    situated based on the facts alleged here.  (Dkt. Nos. 55 at 11, 61 at 13.)  The Parties disagree

9    about whether the CPA contains a clear statutory directive on choice of law, and if it does not,

10   about whether Washington or Texas has the "most significant relationship" to the action.  (Dkt.

11   Nos. 55 at 12-17, 61 at 19-26, 64 at 3-10.)

12          A.      Statutory Directive on Choice of Law

13          To determine which of two or more conflicting laws to apply, "Washington courts use the

14   methodology outlined in the Restatement (Second) of Conflict of Laws § 6 (1971)."  Experience

15   Hendrix, L.L.C. v. HendrixLicensing.com, LTD, 766 F. Supp. 2d 1122, 1132 (W.D. Wash.

16   2011) (citing Seizer v. Sessions, 132 Wn.2d 642, 650-52 (1997)).  Section 6(1) of the

17   Restatement provides that "[a] court, subject to constitutional restrictions, will follow a statutory

18   directive of its own state on choice of law."  Restatement § 6(1).  Section 6(2) lays out factors

19   relevant to the most significant relationship inquiry where "there is no such directive."

20   Restatement § 6(2); see also Restatement § 145 (directing application of the most significant

21   relationship test "under the principles stated in § 6" and listing contacts "to be taken into account

22   in applying the principles of § 6"); Restatement § 148 (same).  Accordingly, the Court must first

23   determine whether the CPA includes a statutory directive on choice of law.  If there is a

24

ORDER GRANTING DEFENDANTS'
SUPPLEMENTAL MOTION TO DISMISS- 4

1    directive, the Court must consider whether it would be unconstitutional to apply the CPA to

2    Defendants based on the facts alleged here.  If there is no statutory directive, the Court must

3    proceed to application of the most significant relationship test.

4           Plaintiff argues that Washington's CPA, whose legislative purpose was examined and

5    interpreted by the Washington Supreme Court in <u>Thornell v. Seattle Serv. Bureau, Inc.</u>, 184

6    Wn.2d 793 (2015), contains a statutory directive that it apply extraterritorially to all unfair or

7    deceptive acts that "directly or indirectly affect the people of Washington."  (Dkt. No. 61 at 12-

8    15, 19-21.)  Citing Restatement § 6(1), Plaintiff argues the Court should give the CPA the range

9    of application intended by the legislature unless constitutional considerations forbid it.  (<u>Id.</u>)

10   Defendant State Farm argues that while the Washington Supreme Court held that the CPA

11   <u>permits</u> claims based on the facts alleged here, providing a cause of action does not equate to

12   <u>requiring</u> application of Washington law regardless of which state has the most significant

13   relationship.  (Dkt. No. 64 at 2-5.)  Defendant argues the Court should proceed to applying of the

14   most significant relationship test, as numerous courts have done for CPA claims in the past.  (<u>Id.</u>)

15          Statutes contain choice-of-law directives where they include "a choice of law provision"

16   or where "the legislative history expressly indicate[s] an intent that the [statute] apply to out-of-

17   state facts."  <u>Experience Hendrix LLC v. James Marshall Hendrix Found.</u>, 240 F. App'x 739, 740

18   (9th Cir. 2007) (citing Restatement (Second) of Conflict of Laws § 6(1) cmts. a-b).  Statutes have

19   been found to contain a choice-of-law provision where, for example, they state that a given

20   statute "shall" apply in all proceedings.  <u>See</u>, <u>e.g.</u>, <u>In re Marriage of Abel</u>, 76 Wn. App. 536, 539-

21   40 (1995) (finding that child support statute contained clear statutory directive on choice of law

22   because it provided that Washington's statutory child support schedule "shall be applied . . . (c)

23   [i]n all proceedings in which child support is determined or modified.").

24

ORDER GRANTING DEFENDANTS'
SUPPLEMENTAL MOTION TO DISMISS- 5

1    The Court finds that the CPA does not include an explicit choice-of-law directive.  First,

2   nothing in the actual text of the CPA indicates that its application is mandatory, in contrast with

3   the use of the term "shall" found to indicate mandatory application of the statute in In re

4   Marriage of Abel.  See 76 Wn. App. 536, 539-40.  Secondly, while the Washington Supreme

5   Court held that the CPA "does allow claims for an out-of-state plaintiff against all persons who

6   engage in unfair or deceptive acts that directly or indirectly affect the people of Washington,"

7   (Dkt. No. 53 at 13), an allowance for claims brought by foreign plaintiffs is not a directive to

8   override ordinary choice-of-law rules.  See, e.g., Yelton v. PHI, Inc., 669 F.3d 577, 583 (5th Cir.

9   2012) (concluding that statutory amendments to Florida wrongful death law to allow

10  extraterritorial application were not intended to represent a statutory directive on choice of law).

11  Finally, as State Farm correctly notes, numerous courts—including this Court—have consistently

12  evaluated choice-of-law issues for CPA claims under Washington's traditional choice-of-law

13  rules, i.e., using the most significant relationship test.  See, e.g., Coe v. Philips Oral Healthcare

14  Inc., 2014 WL 5162912 (W.D. Wash. Oct. 14, 2014).  The Court concludes that the CPA's

15  allowance for extraterritorial claims is not a choice-of-law directive but rather simply a necessary

16  recognition that Washington law, along with the laws of other states, may be implicated in a case

17  involving out-of-state facts where unfair or deceptive acts are alleged to directly or indirectly

18  affect the people of Washington.

19    Because the Court finds that the CPA does not contain a statutory choice-of-law

20  directive, the Court proceeds to application of the most significant relationship test, and finds

21  that Texas, rather than Washington, has the most significant relationship to Plaintiff's claims.

22

23

24

1        B.        Most Significant Relationship

2        Under the most significant relationship test, the Court must determine which state has the

3    most significant relationship to the cause of action.  See, e.g., Kelley v. Microsoft Corp., 251

4    F.R.D. 544, 551 (W.D. Wash. 2008).  The Court must first evaluate the contacts with each

5    interested jurisdiction.  FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180

6    Wn.2d 954, 968 (2014).  The approach is not merely to count contacts, but rather to consider

7    which contacts are the most significant and to determine where these contacts are found.  Id.

8    Second, the Court must evaluate the interests and public policies of potentially concerned

9    jurisdictions.  Id. (citing Southwell v. Widing Transp., Inc., 101 Wn.2d 200, 204 (1984)).  The

10   extent of the interest of each potentially interested state should be determined on the basis,

11   among other things, of the purpose sought to be achieved by their relevant local law rules and the

12   particular issue involved.  Id.

13       Washington has a significant relationship to alleged deceptive trade practices by a

14   Washington corporation, including where a Washington corporation acts as an agent for a

15   foreign corporation.  Washington has a strong interest in promoting a fair and honest business

16   environment in the state, and in preventing its corporations from engaging in unfair or deceptive

17   trade practices in Washington or elsewhere.  Thornell, 184 Wn.2d at 800; see also Panag v.

18   Farmers Ins. Co. of Washington, 166 Wn.2d 27, 49-53 (2009).  This interest is particularly

19   pronounced where the allegedly deceptive scheme was designed in Washington and the

20   deceptive letters sent by mail from Washington to consumers throughout the nation.  And, as

21   recently clarified by the Washington Supreme Court, Washington recognizes CPA claims

22   asserted by non-resident consumers against those "who engage in unfair or deceptive acts that

23   directly or indirectly affect the people of Washington."  Thornell, 184 Wn.2d at 803.

24

1    Conversely, Plaintiff's home state, Texas, has a significant relationship to allegedly

2  deceptive trade practices resulting in injuries to its citizens within its borders.  Plaintiff received

3  the allegedly deceptive letter in Texas, and allegedly suffered financial injury in Texas when she

4  sought credit monitoring services and retained counsel.  Section 148 of the Restatement and its

5  comments make clear that the alleged misrepresentation to consumers and the consumers'

6  pecuniary injuries, both of which occurred in Texas and not in Washington, should be considered

7  the most significant contacts in this particular case.  See Restatement (Second) of Law on

8  Conflict of Laws § 148 cmts. i, j (1971).  This analysis does not change with application of § 145

9  of the Restatement.

10    Plaintiff argues that Washington has the more significant relationship because it provides

11  protection in this case, whereas Texas does not.  (Dkt. No. 61 at 25 (citing Johnson v. Spider

12  Staging Corp., 87 Wn.2d 577, 583 (1976)).)  The Court agrees with Defendants that a state does

13  not have a more significant or less significant relationship because of the amount of relief its

14  statutes provide to plaintiffs.  See, e.g., Shannon-Vail Five Inc. v. Bunch, 270 F.3d 1207, 1213

15  (9th Cir. 2001) (rejecting argument that California has more significant relationship than Nevada

16  because California had a usury statute and Nevada did not because "the lack of a usury law does

17  not mean that Nevada has a less substantial concern than California about interest rates; rather, it

18  appears to reflect a choice to favor individual contract decisions and the free flow of capital.").

19  And, as the Ninth Circuit recently recognized, each state has a strong interest in determining the

20  optimum level of consumer protection balanced against a more favorable business environment,

21  and to calibrate its consumer protection laws to reflect their chosen balance.  Mazza v. Am.

22  Honda Motor Co., Inc., 666 F.3d 581 (9th Cir. 2012).

23

24

ORDER GRANTING DEFENDANTS'
SUPPLEMENTAL MOTION TO DISMISS- 8

1    In sum, the Court concludes that Texas, not Washington, has the most significant

2    relationship to Plaintiff's claims against both State Farm and SSB.  Accordingly, the Court does

3    not reach Defendants' constitutional arguments.  Because Texas law does not recognize a cause

4    of action based on the facts alleged here, Defendants' Motion to Dismiss is GRANTED.

5                                        **Conclusion**

6    Defendants' Supplemental Motion to Dismiss is GRANTED.  (Dkt. Nos. 9, 12, 55.)  All

7    other pending motions are DENIED as moot.  This matter is DISMISSED with prejudice.

8

9    The clerk is ordered to provide copies of this order to all counsel.

10

11   Dated this 13th day of June, 2016.

12

13

14                                    Marsha J. Pechman
                                      United States District Judge
15

16

17

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANTS'
SUPPLEMENTAL MOTION TO DISMISS- 9